NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0037n.06

No. 09-3855

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 13, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| ERNEST EVANS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |

BEFORE:     BATCHELDER, Chief Judge; SUTTON and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Defendant Ernest Evans appeals his plea-based judgment of conviction for conspiracy to possess with intent to distribute five kilograms or more of a substance containing cocaine and less than fifty kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 21 U.S.C. § 846.  Defendant pleaded guilty on February 25, 2009 and was sentenced to a prison term of 120 months on July 7, 2009.  Between those dates, defendant, though continuously represented by counsel, filed no less than four pro se motions to withdraw his guilty plea.  The district court denied all four motions in rulings from the bench either before or at the time of sentencing.  Defendant now contends the district court abused its discretion in denying the motions.  Defendant also challenges the district court's deferral of substitution of appointed counsel until after ruling on his first motion to withdraw his plea.  Finding no merit in defendant's arguments, we affirm.

## I. Motion to Withdraw Plea

The district court's denial of defendant's motions to withdraw his guilty plea is reviewed for abuse of discretion. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). A district court may permit withdrawal of a guilty plea after it has been accepted but before sentencing upon the showing of a "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B); *Haygood*, 549 F.3d at 1052. Several factors are relevant to the fair-and-just-reason determination:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). This list is nonexclusive; the relevance of any factor depends on the circumstances. *Id.* Defendant has the burden of demonstrating grounds for allowing withdrawal. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

### A. *Timeliness of Motion*

Insisting the district court abused its discretion, defendant Evans emphasizes several factors. First, defendant notes that he filed his first pro se motion to withdraw his guilty plea less than two weeks after he had entered the plea. The district court recognized that defendant did not delay "an inordinately long period of time" before advising the court of his change of heart. The court did not view this factor as dispositive, but impliedly recognized that it weighed in defendant's favor. To be

sure, the shorter the delay, the more likely the motion to withdraw will be granted. *Dixon*, 479 F.3d at 436.

**B.  *Assertion of Innocence***

Defendant also contends he affirmatively asserted his innocence.  In support, he cites his own pro se unsworn declaration, entitled "Assertion of Innocence," filed on June 23, 2008.  The declaration consists of one incomplete sentence:

> Be it known to all courts, government, and other parties, that I, Ernest Evans, as well as any and all derivatives and variation in, the indictment or complaint of any charging instrument with said defendant as named.

R. 22, Declaration.  It thus appears that defendant, in an unsworn document filed some eight months before he pleaded guilty under oath, attempted to assert his innocence of the offenses charged in the indictment.  Though defendant was represented by counsel at the time, the handwritten declaration was not prepared, signed or filed by counsel.  The declaration is consistent with but adds little to the not-guilty plea defendant had entered when he was arraigned three weeks earlier.  The declaration thus has little tendency to show defendant had a fair and just reason to retract his February 25, 2009 sworn admission that he *is* guilty of the conspiracy charged in Count I of the indictment.

In a manner of speaking, defendant also attempted to re-assert his innocence at the April 7, 2009 hearing on his first motion to withdraw:

> I am telling you, Your Honor, I do not want to plead.  I did not want to plead.  I am innocent of this crime, and the tape will at least support that, and that's the only position that I ever had, not the one the agents claim I took.

R. 70, Hearing tr. p. 30.  Defendant's reference to the tape pertains to evidence (ostensibly inadmissible evidence) offered to show that a self-incriminating statement he purportedly gave to

DEA agents in California was false. The district court did not consider the tape, but justifiably questioned whether defendant was in fact asserting his innocence or rather changing his mind based on reassessment of the strength of the government's case against him. *See United States v. Mader*, 251 F.3d 1099, 1106 (6th Cir. 2001) (where defendant admitted committing acts sufficient to make out factual basis for offense, but denied "guilt," no abuse of discretion to deny withdrawal of plea). In fact, throughout the hearing on his first motion to withdraw, defendant did not deny or retract his admission, made in the signed plea agreement and his sworn statement in the change-of-plea hearing, that he had supplied large quantities of cocaine and marijuana to co-defendant Anthony Carter for delivery to Cleveland.[1]

Moreover, at the time of sentencing, when the district court took up defendant's third and fourth pro se motions to withdraw his plea, defendant denied wanting to change the facts he admitted in the plea agreement. That is, although defendant insisted that specific dates reflected in the government's proofs were at odds with the dates set forth in the plea agreement, he stopped short of denying or retracting his admission that he participated in the conspiracy. Thus, again, the record supports the district court's impression that defendant was not so much asserting his innocence as questioning the strength of the prosecution evidence. This is not grounds for withdrawal of a sworn guilty plea. *See Mader*, 251 F.3d at 1106; *United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009) (discovery by defendant of plausible defense theory insufficient to warrant withdrawal of

---

[1]When defendant entered the guilty plea, he knew that co-defendant Carter had already pleaded guilty to the Count 1 conspiracy charge pursuant to a plea agreement that required him to cooperate with the prosecution. R. 44, Carter Plea Agreement ¶ 13.

plea); *United States v. Showalter*, 569 F.3d 1150, 1155 (9th Cir. 2009) (second-guessing plea based

on reappraisal of quality of government's case insufficient reason);  *United States v. Schmidt*, 373

F.3d 100, 103 (2d Cir. 2004) (same); *United States v. Morales*, 120 F.3d 744, 747-48 (8th Cir. 1997)

(same).

Furthermore, any minor discrepancies between the chronology of events set forth in the plea

agreement and the actual dates that might have been established by the evidence was of little

consequence.  As the district court observed, references to the relevant dates in the factual basis for

the plea were modified by the preposition "on or about."  Thus, defendant's concern about the

"factual accuracy" of the plea agreement dates hardly signals a claim of actual innocence or impugns

the integrity of defendant's guilty plea.

## C.  *Circumstances Surrounding Plea*

The record does support defendant's contention that he was reluctant to enter the guilty plea.

The district judge recognized this reluctance at the time of the change-of-plea hearing; that's why

he was "very thorough" and "wanted to make sure [defendant] understood exactly what was going

on, . . . bend[ing] over backwards" to make sure defendant was satisfied. R. 70, Hearing tr. pp. 43-

44.  As he exercised this special caution, the district judge made the following observations:

> Now, I didn't find anything in your comments during the colloquy to give me a
> concern. You didn't seem unsure. You didn't seem upset. You didn't seem like you
> were being forced, and I was putting those questions to you, and I never found you
> to be shy to the extent that you would lie or misrepresent on the questions and
> answers that you were going to be giving, the answers you were going to be giving
> to my questions.

*Id.* at 45.

Nonetheless, defendant contends he was "coerced" into pleading guilty, that he was pressured by his attorney and his mother and his wife into not risking his life. Defendant's counsel at the time, Rufus Sims, did not prepare, sign or file defendant's motion to withdraw, but filed a sworn declaration in response to it. In it, he denied that he pressured defendant to plead guilty. Sims permitted defendant to use his cell phone in the courtroom on the day of the change-of-plea hearing to confer with his wife and mother, but denied hearing or seeing any indication that defendant was pressured by his family to plead guilty. Based on his review of the evidence in the case and his twenty-one years' experience, Sims believed the plea agreement, including the government's commitment to recommend a sentence of 120 months (the statutory mandatory minimum, well below the applicable advisory Guidelines range) was in defendant's best interest—considering that, if he went to trial, he faced the possibility of a career offender enhancement and mandatory life imprisonment without parole. Sims conceded that he and defendant "had lively, intelligent, forthright discussions . . . and disagreements" about what the evidence would show at trial, but ultimately, "the decision was made by Mr. Evans to sign the plea agreement." R. 70, Hearing tr. p.32.

The contents of the plea agreement were subject to negotiation and were changed in several respects at defendant's request before he signed it. In fact, defendant was even permitted to delete a portion of the factual basis for the plea wherein he would have implicated a third person. Yet, the paragraphs detailing his own participation in the conspiracy defendant agreed to without change. When the agreement was finalized and the plea entered, defendant "did not exhibit any showing of indecision and never hesitated in answering any questions." R. 37, Declaration ¶ 17. In Sims's opinion, the plea was "free and voluntary." *Id.* Indeed, during the plea colloquy, defendant

responded that he was fully satisfied with Mr. Sims's representation and advice, said he understood the plea agreement, and stated that no one attempted in any way to force him to plead guilty. At the conclusion of the change-of-plea hearing, defendant personally thanked the district judge and the Assistant U.S. Attorneys for being patient with him.

Faced with the possibility of life imprisonment if convicted, defendant doubtless experienced considerable stress and anxiety, but this is not the sort of "coercion" that undermines the voluntariness or integrity of his plea. *See Brady v. United* States, 397 U.S. 742, 750-51 (1970) (recognizing that government may not produce plea by actual or threatened physical harm or mental coercion, but rejecting claim that defendant's desire to accept certainty of lesser penalty is product of improper compulsion); *Mader*, 251 F.3d at 1105-06 (rejecting argument that government's threat to enhance sentence was cognizable reason to withdraw plea). We therefore find no error in the district court's evaluation of the circumstances surrounding entry of defendant's guilty plea.

## D. *Defendant's Background and Prior Experience with Criminal Justice System*

In considering defendant's nature and background, the district court noted that defendant, fifty-two years of age, completed high school and had "some college." Observing that defendant was not a man of "limited intelligence," the court found there was no question that defendant understood what was going on when he entered the guilty plea. The court also observed that defendant had a number of prior convictions and was no stranger to the criminal justice system, negating the possibility that defendant was confused about the nature and significance of the change-of-plea proceeding. Defendant does not dispute these findings by the court, and impliedly concedes that these considerations weigh against him.

**E.** *Potential Prejudice to Government*

The district court noted the government had not made a compelling showing that it would suffer substantial prejudice if defendant were allowed to withdraw his plea. The court did not, however, place much weight on this factor. Indeed, as the government points out, it was not required to show prejudice "unless and until defendant advances and establishes a fair and just reason for allowing the withdrawal." *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006). Because consideration of the foregoing factors shows that defendant did not demonstrate a fair and just reason to withdraw his plea, the requirement to show potential prejudice was not triggered.

**F.** *Conclusion*

In sum, only one of the above factors weighs in favor of granting defendant's motion to withdraw his guilty plea. Defendant did not delay, but relatively quickly advised the court of his change of heart. Nonetheless, evaluation of the other factors reveals that defendant lacked what the law recognizes to be a "fair and just reason" to withdraw his plea. Rule 11's fair-and-just-reason requirement is not met where a defendant makes a tactical decision to enter a plea and then seeks to withdraw it when he comes to believe he made a bad choice. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). This is so because the entry of a guilty plea is no mere gesture, no mere formality, no mere trifle, but a "grave and solemn act." *Hyde*, 520 U.S. at 677. After a defendant has sworn in open court that he actually committed the crime and that he is pleading guilty because he is guilty; and after the court has found a factual basis for the plea and has accepted the plea, the defendant cannot be allowed to withdraw it simply on a lark or a whim. *Id.* at 676-77. To allow a defendant to withdraw his plea for other than a "fair and just reason" would "degrade the otherwise

serious act of pleading guilty into something akin to a move in a game of chess." *Id.* at 677.

Because we concur in the district court's assessment that defendant Evans did not establish a fair and just reason to withdraw his plea, we find no abuse of discretion in the denial of defendant's motion.

## II. Ineffective Assistance of Counsel

In his second claim of error, defendant contends the district court erred when it allowed appointed counsel Rufus Sims to continue to represent him at the hearing on his first motion to withdraw his plea. Defendant points out that the first motion to withdraw his plea included a motion to "determine representation." When Sims filed a response addressing defendant's motion to withdraw the plea, defendant contends it became apparent that Sims's ability to effectively represent him was compromised by a conflict of interest. In support, defendant cites *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir. 1995), where the court recognized that a defendant's motion to withdraw his guilty plea based on the allegation that the plea was coerced by his attorney poses a conflict of interest. Yet, the *Lopez* court also recognized that the conflict of interest rises to the level of cognizable ineffective assistance only if it adversely affected counsel's performance. *Id.*

Essentially, defendant challenges the district court's decision not to appoint new counsel at the time his first motion to withdraw his plea was considered. The court's ruling is reviewed for abuse of discretion. *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009). When a defendant expresses his dissatisfaction with counsel, the court is obliged to make inquiry to determine whether there is good cause for substitution of counsel. *Id.* Our review of the court's ruling is guided by consideration of the following factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Id.* (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001). *See also United States v. Henderson*, 626 F.3d 326, 340 (6th Cir. 2010). Our review of the record persuades us that the court made appropriate inquiry and did not abuse its discretion in deferring action on defendant's motion to determine representation.

First, we acknowledge that defendant timely raised concern about Sims's representation after he came to believe he had been "coerced" into pleading guilty. Second, even though the district judge might have been justifiably exasperated, having already substituted Attorney Sims for defendant's first appointed counsel, he conducted a hearing on April 7, 2009, and addressed defendant's pro se motion to withdraw guilty plea and to determine representation with patience and care. The court carefully inquired into defendant's asserted reason for his change of heart so as to understand the reason for his dissatisfaction with counsel's representation. The court patiently listened to defendant explain his difference of opinion about the significance of the audiotape recording of a conversation he had with DEA agents in California. The court heard both Attorney Sims and the Assistant U.S. Attorney explain that the tape was probably not admissible and considered Sims's opinion that the tape would be "more harmful and prejudicial than beneficial to Mr. Evans." R. 37, Declaration ¶ 9.[2] Finally, after ruling on the motion to withdraw the guilty plea,

---

[2]While defendant views Sims's declaration as evidence of a conflict of interest that required appointment of new counsel, it was entirely appropriate for Sims, as an officer of the court observing his duty of candor, to cooperate with the inquiry necessitated by defendant's pro se motion.

the court instructed Sims to confer with his client further in light of the court's ruling and advise the court as soon as possible whether there was any need to appoint new counsel to represent defendant at sentencing. At no time during the hearing did defendant, who was given ample opportunity to address the court, specifically ask for appointment of new counsel. The court thus deferred ruling on defendant's motion to determine representation.

Next, three days before the date set for sentencing, defendant filed his second pro se motion to withdraw his guilty plea and a pro se motion to continue the sentencing date for thirty days. When the court went forward with the hearing on May 14, 2009, Sims advised the court that the communication problem with his client had been resolved. But when the court attempted to confirm this, advising that the denial of the motion to withdraw plea would not be reconsidered, defendant insisted that he wanted new counsel. The court thereupon adjourned the sentencing and appointed new counsel.

Thus, notwithstanding the public's interest in the prompt and efficient administration of justice, the court, after having made further inquiry into the integrity of the attorney-client relationship, granted defendant's request for appointment of new counsel. Defendant subsequently filed two more pro se motions to withdraw guilty plea, which the court took up and denied at sentencing on July 7, 2009, but defendant made no further objection regarding his representation. The court went on to sentence him to a prison term of 120 months, in accordance with parties' agreed-to recommendation.

It follows that defendant's present claim is limited to challenging the court's decision to refrain from appointing new counsel before addressing his first motion to withdraw plea. Yet, as the

above discussion reveals, defendant, despite having moved the court to determine representation, did not, at the hearing, either specifically request appointment of new counsel or express such dissatisfaction with Sims's representation as to signal the sort of breakdown in the relationship that would warrant substitution of counsel at that time. In our opinion, the district court acted patiently and prudently, made adequate inquiry in response to defendant's expressed concerns about his representation, and, when the breakdown in the relationship became manifest, relieved Attorney Sims of further responsibility and appointed new counsel. Defendant has not shown that he suffered any cognizable prejudice as a result of the court's decision to defer action on his motion to determine representation until after ruling on the first motion to withdraw plea. We find no abuse of discretion.

### III. Conclusion

Accordingly, we deny both of defendant's claims of error. The judgment of conviction is **AFFIRMED**.