NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0645n.06

No. 09-5340

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 31, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
                                              )
     Plaintiff-Appellee, )        ON APPEAL FROM THE
                                              )        UNITED STATES DISTRICT
v. )        COURT FOR THE WESTERN
                                              )        DISTRICT OF KENTUCKY
MICAH DION GASAWAY, )
                                              )
     Defendant-Appellant, )        OPINION
                                              )
_____ )

Before: CLAY and STRANCH, Circuit Judges; BARRETT, District Judge.[*]

**Michael R. Barrett, District Judge.** Micah Dion Gasaway accepted a plea agreement and pled guilty to six counts of possession with intent to distribute drugs and one count of being a felon in possession of a firearm. Nearly four months later at his Sentencing Hearing, Gasaway made an oral motion to withdraw the guilty plea. The district court judge denied that motion. Gasaway appeals the district court's denial of his motion to withdraw the guilty plea. For the following reasons, **AFFIRM** the judgment of the district court.

## BACKGROUND

*A.    Factual History*

On December 1, 2006, Appellant Micah Dion Gasaway sold an undercover detective and a police informant heroin and crack cocaine outside his residence in Louisville, Kentucky. The

_____

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

transaction was monitored and recorded. Shortly thereafter, Gasaway was arrested, and police obtained and executed a search warrant for his residence. The search uncovered significant quantities of heroin, cocaine, cocaine base, and marijuana. Police also discovered a .40 caliber semiautomatic pistol, which Gasaway unlawfully possessed as a convicted felon. (R. 55 Presentence Report, 2-3.)

In a nine-count Indictment, a grand jury charged Gasaway with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), (C), and (D), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (d). (R. 1 Indictment.). Gasaway had been convicted of drug crimes before, and the United States filed a 21 U.S.C. § 851 notice to rely on those convictions at sentencing. (R. 42 Information and Notice, 1.)

On November 5, 2008, the date his case was set for trial, Gasaway entered into a Plea Agreement to plead guilty under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (R. 50 Plea Agreement, 1.) In exchange for a guilty plea, the government agreed to a 180-month sentence, followed by a 60-month supervised release, and withdrawal of its § 851 notice. (R. 50 at 5.) If the United States had not agreed to withdraw the § 851 notice, Gasaway faced a statutory mandatory life sentence. The Presentence Report calculated his guidelines imprisonment range at 262 to 327 months. (R. 55 Presentence Report, 10.) As part of the plea agreement, Gasaway waived his right to appeal or collaterally attack his conviction. (R. 50 at 6.)

At the November 5, 2009, Change of Plea Hearing, Gasaway entered a guilty plea in conformance with the Plea Agreement. The court found that Gasaway was competent, that he understood his constitutional rights, that he entered the agreement of his own free will, and that he understood the terms of the Plea Agreement. (R. 77 Change of Plea, 3-6.) After the government

summarized the evidence in support, and after Gasaway agreed that this summary was correct, he pled guilty to each count of the indictment. (R. 77 at 7-10.) The court entered and accepted the guilty pleas. (R. 77 at 10.)

However, at the February 27, 2009, Sentencing Hearing, Gasaway orally moved to withdraw his guilty plea. (R. 78 Transcript of Sentencing, 1.) Gasaway made this motion against the advice of his attorney, but his counsel did indicate that he "went over every one of these issues" with Gasaway "a number of times." (R. 78 at 10.) After clarifying what the Plea Agreement called for and reviewing his withdrawal options, the court asked for the reasons why Gasaway wanted to withdraw his plea. (R. 78 at 6.) Gasaway's counsel first indicated that he "wants to maintain his innocence and go to trial on these charges." (R. 78 at 6.) He next indicated that "he was unduly coerced by family members, that he maintained his innocence in this case from day one, [and he] received a lot of pressure from his family the weeks . . . prior to trial." (R. 78 at 7.) He also stated that Gasaway "did not want to" plead guilty at the Change of Plea Hearing and that he "has had buyer's remorse since then, maintains his innocence, and wants the Court to consider all those factors." (R. 78 at 7.) Gasaway also addressed the court saying, "I feel it's in [my] best interests for me to go to trial. Not only that, that's the only way I'm going to be able to hold on to my appeal rights. As the plea agreement is, I've got to give up all my appeal rights for 180 months." (R. 78 at 10.) Gasaway also stated, "I pled guilty because I was told to do so, and that wasn't what I wanted to do." (R. 78 at 10-11.) Gasaway further indicated that he had decided to withdraw his guilty plea shortly after the Change of Plea Hearing. As he stated, "[m]y mind was already changed days after that court date." (R. 78 at 14.) His counsel argued that the court should excuse any delay because

Gasaway was held in a county jail where he did not have easy access to his lawyer. (R. 78 at 13.) However, counsel did acknowledge that he met with Gasaway at that county jail "a number of times" and that he "went over every one of these issues" with him. (R. 78 at 10.)

In opposition to the motion to withdraw, counsel for the government reviewed some of the applicable factors and argued that significant time had lapsed since the plea was accepted. (R. 78 at 12.) Nearly four months had passed -- the Change of Plea Hearing was November 5, 2008, and the Sentencing Hearing was February 27, 2009. The government next maintained that Gasaway's experience weighed against accepting the motion to withdraw. It argued that Gasaway's two prior felony convictions, one of which resulted in a guilty plea, was an indication of his experience with the criminal justice system. (R. 78 at 12.) The government also mentioned the factor of prejudice to the government, but counsel made no argument on that point. (R. 78 at 13.) Overall, the government argued that Gasaway did not present sufficient reasons to warrant granting the motion. (R. 78 at 13.)

In a final attempt to convince the judge, Gasaway stated, "I'm innocent of these charges, and I would like to prove to the jury that I am innocent." (R. 78 at 13-14.) Referring to the Change of Plea Hearing, he also stated that his "mind was already changed days after that court date." (R. 78 at 14.)

In denying Gasaway's motion to withdraw his guilty plea, the judge stated, "I'm not convinced . . . the defendant thinks he's -- or believes he's innocent." (R. 78 at 14.) In other words, the district court stated, "I don't believe his assertion of absolute innocence." (R. 78 at 15.) He concluded, "I don't think a convincing case has been made here . . . ." (R. 78 at 15.) He went on

to sentence Gasaway in accordance with the terms of the plea agreement -- 180 months imprisonment and five years supervised release. (R. 78 at 19-20.)

### B. Procedural History

On March 6, 2009, Gasaway filed a pro se motion to reconsider the court's decision on his motion to withdraw his guilty plea. (R. 61, Motion for Reconsideration.) The district court denied this motion on April 21, 2009. (R. 72 Order.) Gasaway filed a timely notice of appeal to the United States Court of Appeals for the Sixth Circuit on March 10, 2009. (R. 62 Notice of Appeal.)

After Appellant filed his brief before this Court on December 18, 2009, the government filed a motion to dismiss for lack of jurisdiction. Appellant filed a response in opposition, and Appellee filed a reply in support. On April 15, 2010, the motions panel ordered that the government's motion to dismiss be referred to the merits panel.[1] A new briefing schedule was set, and oral arguments were set for July 27, 2011. However, oral arguments were later vacated, and this case was submitted solely on the briefs.

## ANALYSIS

## I. GASAWAY'S MOTION FOR WITHDRAWAL OF HIS GUILTY PLEA

### A. Standard of Review

The Sixth Circuit reviews a district court ruling on a motion to withdraw a guilty plea filed after the court accepted the plea for abuse of discretion. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (*citing United States v. Mader*, 251 F.3d 1099, 1105 (6th Cir. 2001)). A district court

---

[1]As to the government's motion to dismiss for lack of jurisdiction, we decline to address this issue because Gasaway's appeal lacks merit.

abuses its discretion where "it relies on clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998). "This Court may also find an abuse of discretion if the district court 'committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Ellis*, 470 F.3d at 280 (*quoting United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003)).

**B.      Did the District Court Abuse its Discretion by Denying Gasaway's Motion?**

Under Rule 11 of the Federal Rules of Criminal Procedure, "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). "A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). This Court applies a seven-factor test when determining whether a defendant presents valid grounds for plea withdrawal. *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011). The factors are as follows:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (*quoting United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). These factors are "a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025,

1027 (6th Cir. 1996). It is not always necessary for a court to address each factor when deciding on a motion to withdraw a plea. *See id.*

The purpose of this test is "'to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *Id.* (*quoting Bashara*, 27 F.3d at 1181). Furthermore, "[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Id.* (internal quotations omitted).

Gasaway argues that if the district court had properly addressed the relevant seven factors in weighing Gasaway's motion it would have found just cause for the withdrawal of his guilty plea. (Appellant's Br., 7.) In other words, Gasaway argues that the district court committed an abuse of discretion. More specifically, he maintains that "[w]hile the government referred to some of those factors in its argument; including the length of time between Gasaway's plea and his motion to withdraw, Gasaway's previous experience with the criminal justice system and the possibility of prejudice to the government; the court made no reference to those factors other than Gasaway's motion was 'at the last second before his sentencing.'" (Appellant's Br., 9.)

As an initial point, Gasaway's overall argument that the district court failed to "concentrate on any of the seven factors set out in the weighing test" (Appellant's Br., 9) is without merit. As a matter of law, the seven factors are "a general, non-exclusive list," and a court does not need to address each factor in every case. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The

overriding requirement is that a defendant must show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

A review of the Sentencing Hearing Transcript reveals that the district court properly weighed nearly all of the relevant factors. First, the court considered the circumstances underlying the guilty plea by reviewing the terms of the Plea Agreement and comparing it to what Gasaway would face if his case went to trial. (R. 78 at 2-4.) Second, the court considered the practical question of whether Gasaway's prior confession at the Change of Plea Hearing could be used against him at trial. (R. 78 at 7-9.) Third, the court considered Gasaway's claim that family pressure coerced him into accepting the plea. (R. 78 at 9.) Fourth, the court considered Gasaway's statements that he did not think it was in his best interest to plead guilty, and that he did not want to give up his appeal rights. (R. 78 at 11.) Fifth, he considered Gasaway's claim of actual innocence. (R. 78 at 14, 15.) Sixth, the judge considered the issue of timing, saying that Gasaway's motion came at "the last minute." (R. 78 at 14, 16.) The court also heard the government's arguments about timing, Gasaway's experience with the court system, and prejudice to the government. (R. 78 at 12-13.) Furthermore, the judge gave Gasaway time to confer with his attorney off the record (R. 78 at 10), he gave Gasaway several chances to make his case by speaking directly to the court (R. 78 at 10, 13, 15, 16), and he even went so far as to explain the policy behind his ruling (R. 78 at 16) and explain why Gasaway's motion was denied (R. 78 at 18.). The district court maintained throughout that Gasaway had to present a "good reason" for why his motion should be granted. (R. 78 at 6, 9, 15, 16, 18, 19.)

The district court either heard arguments on, or directly discussed, nearly all of the seven factors. The only factor the judge did not address was the defendant's nature and background. Appellant's argument that the district court failed to properly weigh the relevant factors is without merit.

Appellant's specific arguments about each of the seven factors are equally unpersuasive. Application of the factors here demonstrates that the district court did not abuse its discretion in denying Gasaway's motion to withdraw his guilty plea.

*1.      Timing of the Motion to Withdraw*

As to the first factor -- the amount of time that elapsed between the plea and the motion to withdraw -- the district court considered that the motion was made at "the last minute before his sentence." (R. 78 at 14.) Appellant argues that "the district court chose to ignore the explicit testimony of both Gasaway and his attorney that he had wanted to withdraw his guilty plea just days after making it." (Appellant's Br., 10.)

Gasaway entered his guilty plea on November 5, 2008, and made his motion to withdraw on February 27, 2009 -- 114 days later. In previous cases, this Court has refused to allow plea withdrawal when intervening periods were as brief as one month. *See United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (collecting cases). Here, the elapsed time weighs against Gasaway.

Appellant's argument that Gasaway wanted to withdraw his guilty plea just days after making it is unavailing. District courts cannot act on a defendant's intentions alone. Holding otherwise would open the door to all manner of after-the-fact justifications.

2.      *Reasons for the Failure to Withdraw Earlier*

Going to the second factor -- the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings -- Appellant argues that Gasaway's location of confinement, Grayson County Jail, made it difficult for him to access his attorney. (Appellant's Br., 10.) This argument directly conflicts with the statements of Gasaway's counsel. When Gasaway's attorney presented the motion to withdraw he stated, "I met with my client in Grayson County a number of times," and "[w]e went over every one of these issues." (R. 78 at 10.) This testimony reveals that Appellant's argument here is without merit. Furthermore, the Sixth Circuit has considered and rejected such arguments in the past. *See, e.g.*, *United States v. McIntyre*, 381 F. App'x 535, 539 (6th Cir. 2010) (holding that an unsubstantiated claim of confinement under circumstances that prevent ready communication with a defendant's attorney is not a valid reason for failing to move for withdrawal earlier). Therefore, this factor weighs against Gasaway.

3.      *Assertion of Innocence*

The third factor -- whether the defendant has asserted or maintained his innocence -- at first seems to weigh in Gasaway's favor. At the hearing, Gasaway repeatedly asserted his innocence. (R. 78 at 6, 7, 13, 14.) However, when considering this factor, the judge stated, "I'm not convinced [that] the defendant thinks he's -- or believes he's innocent," and, "I don't believe his assertion of absolute innocence." (R. 78 at 14, 15.)

This is similar to what occurred in *United States v. Thomas*, 86 F.3d 1154 (4th Cir. 1996) (unpublished table decision). Upon review of whether a district court abused its discretion in refusing to permit the withdrawal of a guilty plea, the *Thomas* court considered the situation where

the district court did not believe that the defendant had credibly asserted his innocence. *Id.* at *2. The Fourth Circuit found no fault with the district court, stating that "[t]he district court heard the testimony first-hand; we are in no position to second-guess its assessment." *Id.*; *see also United States v. Navanick*, 13 F.3d 407, at *3 (10th Cir. 1993) (unpublished table decision) (finding no error where the district court did not believe defendant's claim of innocence).

Furthermore, the evidence of guilt in this case works against Gasaway's credibility. Gasaway was recorded selling heroin and crack cocaine to an undercover police detective, and a search of his residence uncovered significant quantities of heroin, cocaine, cocaine base, marijuana, and a .40 caliber semi-automatic pistol. Asserting actual innocence under these circumstances strains credulity. The district court may be excused for not believing Gasaway's claim of innocence on these facts, especially given that he heard Gasaway's testimony first hand. Regardless, "[b]elated claims of innocence without more are simply insufficient to justify withdrawal of a guilty plea." *United States v. Gregory*, 41 F. App'x 785, 792 (6th Cir. 2002) (*citing United States v. Spencer*, 836 F.2d 235, 239 (6th Cir. 1987)). This factor weighs against Gasaway because his claim of innocence is not credible.

4.      *Circumstances Underlying the Guilty Plea*

Appellant argues that the fourth factor -- the circumstances underlying the entry of the guilty plea -- weighs in his favor. Gasaway maintains that he faced "enormous pressure from his family to accept the government's offer." (Appellant's Br., 11.) He implies that the retention of private counsel was facilitated "through the assistance of his family," and this increased the influence his family had over him, ultimately convincing him to accept the plea offer. (Appellant's Br., 11.)

Appellee counters that "Gasaway gave the district court no specifics of that 'pressure,'" and that he "never claimed he was threatened or extorted." (Appellee's Br., 21.)

Having family members convince one to do something is not "coercion." It may be fairly assumed that Gasaway's family had his best interests at heart, especially given that they retained private counsel for him. (Appellant's Br., 11.) In considering his best interests, Gasaway's family made a rational decision comparing the 180-month sentence the government offered with the statutory mandatory life sentence he otherwise faced. The pressure they exerted to convince Gasaway to accept this deal, especially in light of the evidence against him, cannot rightly be classified as improper coercion.

This conclusion accords with prior Sixth Circuit precedent. *United States v. Evans*, 406 F. App'x 946 (6th Cir. 2011), considered a situation where the defendant contended that he was coerced into pleading guilty by his attorney, his mother, and his wife. *Id.* at 949. In analyzing this situation, and other factors, the Court stated that when "[f]aced with the possibility of life imprisonment if convicted, defendant doubtless experienced considerable stress and anxiety, but this is not the sort of 'coercion' that undermines the voluntariness or integrity of his plea." *Id.* at 950 (*citing Brady v. United States*, 397 U.S. 742, 750-51 (1970) (recognizing that the government may not produce plea by actual or threatened physical harm or mental coercion, but rejecting claim that defendant's desire to accept certainty of lesser penalty is product of improper compulsion)). The family pressure that Gasaway alleges here is not the type of coercion that makes a defendant's acceptance of a guilty plea involuntary.

This conclusion accords with the decisions of other circuits as well. For example, in *United States v. Robinson*, No. 10-2832, 2011 WL 1790063 (3rd Cir. Apr. 26, 2011), the Third Circuit held that "family pressure to plead guilty is not a sufficient basis for granting leave to withdraw a guilty plea." *Id.* at *4; *see also United States v. Schwartz*, 403 F. App'x 781, 785 (3rd Cir. 2010) (holding that "family pressure to plead guilty provides an insufficient basis for granting leave to withdraw a plea of guilty"); *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989) (holding that family pressure, though "probative of an accused's *motivation* for pleading guilty . . . does not necessarily show coercion, duress, or involuntariness"); *United States ex rel. Brown v. LaVallee*, 424 F.2d 457, 461 (2d Cir. 1970) (concluding that pressure from defendant's lawyers and mother to plead guilty was not coercive, but rather "sound advice"). This factor does not weigh in Appellant's favor.

5.      *Defendant's Nature and Background*

As to the fifth factor -- the defendant's nature and background -- Appellant makes no specific arguments on this point (*see* Appellant's Br., 11), and the district court did not directly address this issue (*see* R. 78). Thus, it is not addressed here.

6.      *Experience with the Criminal Justice System*

As to the sixth factor -- the degree to which the defendant has had prior experience with the criminal justice system -- the government's counsel argued this point at the Sentencing Hearing. The government argued that Gasaway's two prior felony convictions, one of which resulted in a guilty plea, was an indication of his experience with the criminal justice system. (R. 78 at 12.) In his Brief, Gasaway maintains that his only prior experience with entering guilty pleas was in state circuit court -- he had no previous involvement with the federal system. (Appellant's Br., 15-16.)

13

This is a distinction without a difference. Appellant has pointed to no cases that distinguish between state-court and federal-court experience. However, there are cases that stand for the opposite proposition -- that there is no distinction between experience in state and federal courts. *See, e.g.*, *United States v. McIntyre*, 381 F. App'x 535, 539 (6th Cir. 2010) (considering state-court experience with the criminal-justice system); *United States v. Ward*, 356 F. App'x 806, 809 (6th Cir. 2009) (considering "extensive experience with pleading in state courts"). Gasaway's experience with the criminal-justice system weighs against his motion to withdraw his guilty plea. *See id.*

7.     *Prejudice to the Government*

The final factor -- potential prejudice to the government if the motion to withdraw is granted -- was not discussed by the district court at Gasaway's Hearing. The government briefly mentioned it as a factor to be considered, but it did not state how it could be prejudiced. (R. 78 at 13.) Gasaway now argues that there was no prejudice to the government because, "it is difficult to conceive of any such prejudice to the rescheduling of a case for trial when that case involved only a single incident of alleged drug trafficking and a handful of police officers as witnesses." (Appellant's Br., 16.) This may be true, but it does not establish a fair and just reason for allowing the withdrawal. "The government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *United States v. Benton*, 639 F.3d 723, 729 (6th Cir. 2011) (internal quotations omitted) (*quoting Ellis*, 470 F.3d at 286)). Here, because all the preceding factors either weigh against Gasaway, or are neutral at best, the government is not required to show that it would be prejudiced by withdrawal of the plea. *See id.*

8.      *Summary*

Because all factors are either neutral or weigh against Gasaway, the district court did not

abuse its discretion in denying Gasaway's motion to withdraw his guilty plea.  Gasaway failed to

show a fair and just reason why the district court should have granted his motion.


## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court..